## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

     Plaintiff,              1:20-cv-06573-NLH-AMD

     v.                      **OPINION**

C. ABBONIZIO CONTRACTORS,
INC. and PETER ABBONIZIO,

     Defendants.

**APPEARANCES:**

MARK CHRISTOPHER ORLOWSKI
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
970 BROAD STREET
SUITE 700
NEWARK, NJ 07101

     *On behalf of Plaintiff United States of America*

VINCENT P. SARUBBI
DANIEL JOSEPH DEFIGLIO
ARCHER & GREINER
ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033

     *On behalf of Defendant C. Abbonizio Contractors, Inc.*

LANE F. KELMAN
SYDNEY PIERCE
COHEN SEGLIAS PALLAS GREENHALL & FURMAN
1600 MARKET STREET
32ND FLOOR
PHILADELPHIA, PA 19103

     *On behalf of Defendant Peter Abbonizio*

**HILLMAN**, District Judge

This matter concerns claims by Plaintiff, the United States of America, that a subcontractor in a federally funded state highway improvement project perpetrated a "pass-through" scheme in contravention of the federal Disadvantaged Business Entity program, compliance with which is a condition for states to receive funding from the federal government.  Currently before the Court are the motions of the subcontractor, Defendant C. Abbonizio Contractors, Inc. ("CAC"), and its president, Defendant Peter Abbonizio, to dismiss Plaintiff's claims against them.  For the reasons expressed below, CAC's motion will be granted in part and denied in part, and Peter Abbonizio's motion will be granted.

**BACKGROUND**

The Federal Highway Administration ("FHWA"), an agency within the United States Department of Transportation ("USDOT"), provides funding to states and local governments for the construction and improvement of highways and bridges.  In the Surface Transportation Assistance Act ("STAA"), Congress desired that these federal transportation funds be spent to hire Disadvantaged Business Entity ("DBE") companies.[1]  The stated

---

[1] A DBE is defined as a business "(1) [t]hat is at least 51 percent owned by one or more individuals who are both socially

objective of the DBE program is to, among other things, "ensure non-discrimination in the award and administration of DOT-assisted contracts," and "[t]o create a level playing field on which DBEs can compete fairly for DOT-assisted contracts."  49 C.F.R. § 26.1.

As a condition of receiving DOT funding for public construction projects, state and local governments receiving federal funding must establish goals for DBE participation in their federally funded programs, and enforce the federal guidelines for DBE participation.  Id. § 26.45.  The DBE program seeks to have, "as an aspirational goal," ten percent of DOT's infrastructure project funds expended on DBEs.  Id. § 26.41

A state agency will announce a DBE participation goal when soliciting bids for a contract, and bids for the contract must show how the contractor will meet the goal.  U.S. v. Nagle, 803 F.3d 167, 171 (3d Cir. 2015).  If the prime contractor is not a DBE, this is usually demonstrated by showing that certain subcontractors that will work on a contract are DBEs.  Id. States themselves certify businesses as DBEs.  Id. (citing 49

---

and economically disadvantaged, or in the case of a corporation, in which 51 percent of the stock is owned by one or more such individuals; and (2) [w]hose management and daily business operations are controlled by one or more of the socially and economically disadvantaged individuals who own it." 49 C.F.R. § 26.5.

C.F.R. § 26.81).  A business must be certified as a DBE before it or a prime contractor can rely on its DBE status in bidding for a contract.  Id. (citing 49 C.F.R. § 26.81(c)).

In order to count towards a contract's DBE participation, a DBE must "perform[ ] a commercially useful function on [the] contract," or "CUF."  Id. (quoting 49 C.F.R. § 26.55(c)).  A certified DBE whose "role is limited to that of an extra participant in a transaction, contract, or project through which funds are passed in order to obtain the appearance of DBE participation" cannot be counted towards DBE participation.  Id. (citing 49 C.F.R. § 26.55(c)(2)).

This case concerns claims by the United States that CAC, as a subcontractor on a New Jersey state infrastructure improvement project funded by the federal government, engaged two DBEs which, rather than performing any CUF, served as pass-through entities to falsely claim DBE participation credit, for which the United States ultimately paid.

According to the Plaintiff's complaint, federal funds were allocated to New Jersey for the improvement of the intersection of routes I-295, I-76, and Route 42, located in Camden County, New Jersey, which is one of the busiest interchanges in New Jersey (referred to as the "Direct Connection Project").  The project was broken into four major construction contracts.  The

4

contract set forth the goal of awarding 15% of the total contract value to DBE subcontractors, equipment lessors, or material suppliers for the contract.

The bid opening for the contract on the first phase of the Direct Connection Project was held on December 4, 2012, and five bids were received by the New Jersey Department of Transportation ("NJDOT").  In connection with the bids, the bidders submitted a Disadvantaged Business Enterprise/Emerging Small Business Enterprise Affirmative Action Plan ("D/ESBE Affirmative Action Plan"), which detailed how the bidder anticipated reaching the DBE goal of 15% specifically required by NJDOT for the project, and contained a listing of DBEs that the bidder anticipated using on the project.

PKF, a construction company located in Newtown, Pennsylvania, bid on the project.  PKF's D/ESBE Affirmative Action Plan submitted in conjunction with its bid proposed DBE credits of approximately 15.02% of the total contract value, which was .02% above the DBE goals required by the project. PKF's D/ESBE Affirmative Action Plan contained proposed subcontracts for Sanzo, Ltd. ("Sanzo"), a female-owned business owned by Carol Sanzo, located in Cranford, New Jersey, to furnish and deliver diesel fuel and lubricants.  PKF's D/ESBE Affirmative Action Plan proposed contracts with Sanzo in the

5

amount of $3,140,000, resulting in a proposed DBE credit of $1,884,000, based upon the 60% regular dealer rate.

PKF's D/ESBE Affirmative Action Plan also contained proposed subcontracts for Multifacet, Inc. ("Multifacet"), a minority-owned business owned by Felton Walker, located in Cherry Hill, New Jersey, to furnish and deliver castings, reinforced concrete pipe, and precast fabrications. PKF's D/ESBE Affirmative Action Plan proposed contracts with Multifacet in the amount of $1,603,000, resulting in a proposed DBE credit of $1,130,400 based upon the 60% regular dealer rate. Plaintiff alleges that CAC informed PKF of Sanzo and Multifacet so that PKF's bid could meet the DBE goal set by the NJDOT.

PKF was the low bidder on the project. PKF's D/ESBE Affirmative Action Plan was reviewed by the New Jersey Division of Civil Rights/Affirmative Action and was found to be acceptable. On January 18, 2013, the NJDOT awarded PKF the contract for the first phase of the Direct Connection Project. With regard to the 15% DBE participation goal, the NJDOT required that PKF submit a monthly form detailing DBE participation.

On February 28, 2013, PKF entered into a subcontract with CAC to perform work for the contract on the Direct Connection Project. The total initial price of the Subcontract was

6

$39,108,075.12 to perform "ALL SITEWORK (EARTHWORK AND PIPE INSTALLATION)."  As part of the subcontract, CAC was contractually bound by PKF to comply with the regulations of 49 C.F.R. Part 26 and the NJDOT's DBE program.  Peter Abbonizio, as President of CAC, personally signed the subcontract.

Over a period of several years, PKF reported to the NJDOT on its monthly Form CR-267 reports DBE participation credit for the work purportedly performed by Sanzo and Multifacet as part of PKF's subcontract with CAC.  Plaintiff contends, however, that Sanzo and Multifacet did not perform CUF and instead impermissibly served as pass-through entities for which no DBE credit should have been claimed.

Specifically for Sanzo, Plaintiff alleges that CAC continued to utilize its usual fuel supplier, Taylor Oil, which is not a DBE, but CAC (1) facilitated a sham lease agreement between Sanzo and Taylor Oil, (2) applied Sanzo magnetic signs to cover Taylor Oil signage on Taylor Oil trucks, and (3) created Sanzo invoices, all to make it appear that Sanzo was performing the work for CAC.  Plaintiff's complaint avers that as of January 2017, PKF had claimed $169,610.80 in DBE participation credit directly attributable to work invoiced by Sanzo to CAC.

Similarly, Plaintiff alleges that CAC worked directly with

7

its usual vendors of precast concrete piping and iron sewer piping that were not DBEs, but CAC facilitated a scheme where these other vendors agreed to reduce their prices to accommodate for Multifacet's commission to invoice the materials as a pass-through.  Plaintiff alleges that because Multifacet did not negotiate price, determine quantity or quality, order the materials, or pay for the materials with its own funds, it did not perform a CUF.  Plaintiff's complaint avers that as of January 2017, PKF had claimed $1,403,346.21 in DBE participation credit directly attributable to work invoiced by Multifacet for CAC.

Plaintiff has asserted six counts against CAC and Peter Abbonizio individually:  Count One - False Claims Act – Causing to Be Presented False or Fraudulent Claims to the United States, 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(C) – Fraud in the Inducement; Count Two - False Claims Act – Causing to Be Presented False or Fraudulent Claims to the United States, 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(C); Count Three - Violations of the False Claims Act – Making or Using a False Record or Statement, 31 U.S.C. § 3729(a)(1)(B); Count Four - Common Law Fraud; Count Five - Unjust Enrichment; and Count Six - Payment by Mistake.

Defendants have moved to dismiss all of Plaintiff's counts

against them.  Plaintiff has opposed their motion.

## DISCUSSION

**A.   Subject matter jurisdiction**

This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's state law claims.

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original)

9

(citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d

10

203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

For Plaintiff's claims of common law fraud, Fed. R. Civ. P. 9(b) provides, "In alleging fraud or mistake, a party must state

11

with particularity the circumstances constituting fraud or mistake."  This heightened pleading standard applies to fraud in the inducement claims.  Cotapaxi Custom Design and Manufacturing, LLC v. Chase Bank USA, N.A., 2017 WL 5598215, at *3 (D.N.J. 2017) (citing Ceruzzi Holdings, LLC v. Inland Real Estate Acquisitions, Inc., 2010 WL 1752184, at *4 (D.N.J. 2010) (applying Rule 9(b) to fraud in the inducement claim)).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

For Plaintiff's False Claim Act counts, in Foglia v. Renal Ventures Management, LLC, 754 F.3d 153, 155-56 (3d Cir. 2014), the Third Circuit explained that the "Fourth, Sixth, Eighth, and Eleventh Circuits have held that a plaintiff must show 'representative samples' of the alleged fraudulent conduct, specifying the time, place, and content of the acts and the identity of the actors," while the "First, Fifth, and Ninth Circuits, however, have taken a more nuanced reading of the heightened pleading requirements of Rule 9(b), holding that it is sufficient for a plaintiff to allege particular details of a

scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Foglia, 754 F.3d at 155-56 (citations and quotations omitted). Considering that "the purpose of Rule 9(b) is to provide defendants with fair notice of the plaintiffs' claims," the Third Circuit adopted "the more 'nuanced' approach followed by the First, Fifth, and Ninth Circuits." Id. at 156-57 (citations and quotations omitted).

Thus, in order to survive a motion to dismiss and satisfy the standards of Rule 9(b), a plaintiff asserting claims under the FCA "must provide particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Id. at 158-59 (citations omitted). "Describing a mere opportunity for fraud will not suffice," and, instead, a plaintiff must provide "sufficient facts to establish a plausible ground for relief." Id. at 159 (citations omitted).

### C. Analysis

#### 1. Plaintiff's False Claims Act Counts against CAC

The False Claims Act, 31 U.S.C. § 3729 et seq., imposes civil liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment

or approval," 31 U.S.C. § 3729(a)(1)(A), "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B), or conspires to do so, 31 U.S.C. § 3729(a)(1)(C).

An FCA violation has four elements: falsity, causation, knowledge, and materiality.  United States v. Care Alternatives, 952 F.3d 89, 96 (3d Cir. 2020) (citation omitted).  "A claim can be proven 'false' in two ways: factually, when the facts contained within the claim are untrue, and legally, when the claimant . . . falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment."  Id. (citation omitted).

For materiality, "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."  Universal Health Services, Inc. v. U.S., 136 S. Ct. 1989, 2002 (2016). Section 3729(b)(4) defines materiality using language that has been employed to define materiality in other federal fraud statutes: "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  Id.

14

Because the FCA is not "an all-purpose antifraud statute," or "a vehicle for punishing garden-variety breaches of contract or regulatory violations," "the materiality standard is demanding." Id. (citation omitted). "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial." Id.

Plaintiff claims that CAC's[2] alleged DBE pass-through scheme violated the FCA in two ways: (1) Without the inclusion of the subcontractor information provided to PKF by CAC about Sanzo and Multifacet, which PKF included in its bid to meet the NJDOT's 15% participation goal, PKF would not have been awarded the contract, and concomitantly, Plaintiff would not have paid federal funds for the claimed false DBE participation credits

---

[2] Plaintiff asserts its FCA counts against Defendants collectively. As discussed below, infra Section C.3, the Court finds that Plaintiff has not sufficiently pleaded its claims against Peter Abbonizio individually and separate from its claims against CAC. Thus, the Court will only refer to CAC in this section concerning the analysis of Plaintiff's FCA claims.

(Count One - fraudulent inducement); and (2) CAC knowingly, or with deliberate ignorance or in reckless disregard for the truth, provided false information to PKF that Sanzo and Multifacet had performed CUF, for which CAC knew PKF would file a report to the government regarding DBE compliance and a claim for payment for DBE participation credit, and such DBE compliance was material to, and caused the government's payment (Counts Two and Three - causing the government to pay a false claim and making false statements).  The Court will address each alleged violation in turn.

### a.   *Fraudulent Inducement*

"Although the focus of the False Claims Act is on false 'claims,' courts have employed a fraudulent inducement theory to establish liability under the Act for each claim submitted to the government under a contract which was procured by fraud, even in the absence of evidence that the claims were fraudulent in themselves."  United States v. Wavefront, LLC, 2021 WL 37539, at *5 (D.N.J. 2021) (quoting United States ex rel. Thomas v. Siemens AG, 593 F. App'x 139, 143 (3d Cir. 2014)) (other citations omitted).  To prevail on a fraudulent inducement theory under the FCA, a plaintiff must show that "(1) there was a knowingly false or fraudulent statement; (2) that the

statement was material; and (3) that it caused the government to pay out money or to forfeit moneys due." Id. (quoting Thomas, 593 F. App'x at 143) (other citation omitted).  Under this theory, "each and every claim submitted under a contract . . . which was originally obtained by means of false statements or other corrupt or fraudulent conduct . . . constitutes a false claim." Id. (citations omitted).  Accordingly, "claims for payment subsequently submitted under a contract initially induced by fraud do not have to be false or fraudulent in and of themselves to state a cause of action under the FCA." Id. (citation omitted).

Plaintiff claims that CAC, prior to submitting its bid for the Direct Connection Project, supplied PKF with the two DBE entities that would permit PKF's bid to meet the NJDOT's 15% DBE participation goal.  Plaintiff claims that CAC knew, or should have known, that these DBE entities were not actually going to perform CUF, but it supplied that information to PKF anyway. Plaintiff claims that if PKF had not included those DBE entities and their purported duties in the project, PKF would not have been awarded the contract, and the government would not have paid claims for DBE participation credit that did not occur.

CAC presents numerous arguments for why Plaintiff's FCA

fraudulent inducement count fails.  The Court agrees with CAC on several bases.  First, the complaint is lacking in facts regarding PKF's alleged pre-bid communications with CAC about Sanzo and Multifacet.  The complaint relates that PKF's D/ESBE Affirmative Action Plan identified Sanzo and Multifacet as DBEs to meet the 15% DBE participation goal for its bid.  Although PKF subsequently subcontracted with CAC, which implemented PKF's DBE plan by using Sanzo and Multifacet, the complaint is silent as to any pre-bid communications between CAC and PKF where CAC suggested Sanzo and Multifacet to PKF.  Instead, Plaintiff asserts, in a single, conclusory sentence without any supportive facts, "Prior to the award of the Contract, Defendants provided PKF with information relating to their use of subcontractors, including Multifacet and Sanzo, for DBE participation credit on a proposed subcontract between PKF and Abbonizio Contractors on the Direct Connection Project."  (Docket No. 1 at 29, ¶ 176.)  This lone assertion does not meet the heightened pleading standard for a viable FCA fraudulent inducement claim.

Second, even if CAC did suggest Sanzo and Multifacet to PKF, it was PKF's obligation in its bid on the prime contract to provide a D/ESBE Affirmative Action Plan that met the 15% DBE participation goal, and it was PKF's prerogative as to how to

18

fulfill that goal in its bid.  PKF's bid did not hinge on CAC

utilizing Sanzo and Multifacet to meet the participation goal,

as CAC was not part of PKF's bid.  Instead, PKF itself indicated

that it would utilize Sanzo and Multifacet.  The NJDOT's

decision[3] to award PKF the contract was based on representations

---

[3] When receiving federal funds for improvement projects like the
Direct Connection Project, the NJDOT is required by federal
regulations to monitor and enforce the DBE program's rules:

> § 26.37 What are a recipient's responsibilities for
> monitoring the performance of other program participants?
>
> (a) You must implement appropriate mechanisms to ensure
> compliance with the part's requirements by all program
> participants (e.g., applying legal and contract remedies
> available under Federal, state and local law). You must set
> forth these mechanisms in your DBE program.
>
> (b) Your DBE program must also include a monitoring and
> enforcement mechanism to ensure that work committed to DBEs
> at contract award or subsequently (e.g., as the result of
> modification to the contract) is actually performed by the
> DBEs to which the work was committed. This mechanism must
> include a written certification that you have reviewed
> contracting records and monitored work sites in your state
> for this purpose. The monitoring to which this paragraph
> refers may be conducted in conjunction with monitoring of
> contract performance for other purposes (e.g., close-out
> reviews for a contract).
>
> (c) This mechanism must provide for a running tally of
> actual DBE attainments (e.g., payments actually made to DBE
> firms), including a means of comparing these attainments to
> commitments. In your reports of DBE participation to the
> Department, you must display both commitments and
> attainments.

49 C.F.R. § 26.37.

by PKF, not CAC, and PKF stated that it, and not CAC, would use Sanzo and Multifacet as DBEs to meet the goal.

A missing link in Plaintiff's fraudulent inducement count to connect CAC's alleged actions with the federal government payments is an articulation of when and how PKF came to include Sanzo and Multifacet in its bid to meet its D/ESBE Affirmative Action Plan obligation, and then subsequently subcontract with CAC to fulfill that plan.  Plaintiff alleges that CAC perpetuated a scheme to use these DBEs as pass-throughs so PKF could claim DBE participation credit to NJDOT, which was ultimately paid by the federal government, but Plaintiff does not make any allegations that PKF was ignorant of, aware of, or involved in this scheme.  PKF is the entity that was awarded the contract because of its plan to use Sanzo and Multifacet to meet the 15% DBE participation goal, PFK is the entity that submitted claims for DBE credit, and PKF received payment from federal funds because of those DBE credits.  Although PKF then paid CAC from those federal funds in conjunction with CAC's alleged pass-through scheme, facts regarding PKF's involvement with CAC and its alleged scheme must be averred to support the causation element of Plaintiff's FCA fraudulent inducement claim.

The lack of facts to support the connection between PKF and

CAC also presents another missing link in Plaintiff's contention
that without PKF including Sanzo and Multifacet as directed by
CAC, PKF's DBE participation goal would have been below 15%, and
PKF would not have been awarded the contract.  Even accepting
the premise generally that if PKF did not provide a D/ESBE
Affirmative Action Plan that met the 15% DBE participation goal
the NJDOT would not have awarded it the contract, Plaintiff does
not allege that PKF was required to use the DBE entities
allegedly suggested by CAC.  Again, it was PKF that bid for the
prime contract, and it was PKF's obligation to fulfill the
requirements for that bid.[4]

---

[4] The Court notes that contrary to Plaintiff's assertion that PKF
would not have been awarded the contract if it had not met the
15% DBE participation goal set by the NJDOT, the regulations
cast a less bright-line rule with regard to DBE participation
goals.  The regulations contain a separate appendix to explain
how a state entity like the NJDOT should consider a bidder's
efforts to met the DBE participation goal.  See APPENDIX A TO
PART 26—GUIDANCE CONCERNING GOOD FAITH EFFORTS, 49 C.F.R. Pt.
26, App. A.  Appendix A explains, "When, as a recipient, you
[NJDOT] establish a contract goal on a DOT-assisted contract for
procuring construction, equipment, services, or any other
purpose, a bidder must, in order to be responsible and/or
responsive, make sufficient good faith efforts to meet the goal.
The bidder can meet this requirement in either of two ways.
First, the bidder can meet the goal, documenting commitments for
participation by DBE firms sufficient for this purpose.  Second,
even if it doesn't meet the goal, the bidder can document
adequate good faith efforts.  This means that the bidder must
show that it took all necessary and reasonable steps to achieve
a DBE goal or other requirement of this part which, by their
scope, intensity, and appropriateness to the objective, could

As currently pleaded, Plaintiff's fraudulent inducement count against CAC not only fails to meet the heightened pleading requirements for a FCA violation claim, it does not even meet the plausibility standard.  The Court must dismiss this count against CAC, but such dismissal will be without prejudice in the event Plaintiff gathers facts to fill in the missing links and other pleading deficiencies found above.

> **b.  Causing the government to pay a false claim and making false statements**

In contrast to Plaintiff's fraudulent inducement count, Plaintiff's other two FCA violation counts against CAC are sufficiently pleaded and may proceed.

Putting aside the issues with PKF's bid and whether a pass-through scheme was contemplated from inception, Plaintiff has asserted facts, when accepted as true, that support its claim that CAC's alleged pass-through scheme caused PKF to submit false claims for which the federal government ultimately paid,

---

reasonably be expected to obtain sufficient DBE participation, even if they were not fully successful."  Specifically relevant to Plaintiff's fraudulent inducement claim, Appendix A explains, "The Department also strongly cautions you against requiring that a bidder meet a contract goal (i.e., obtain a specified amount of DBE participation) in order to be awarded a contract, even though the bidder makes an adequate good faith efforts showing.  This rule specifically prohibits you from ignoring bona fide good faith efforts."

and indpendentely constituted false statements to the government.  Plaintiff claims that CAC falsely reported CUF by DBEs that was actually performed by non-DBEs, and by doing so, also falsely certified its compliance with the DBE program, which regulations were incorporated in the subcontract. Plaintiff further claims that CAC's actions where done knowingly or in reckless disregard of its obligations, and CAC's false statements were material to the federal government's payment of DBE participation credits - i.e., the federal government would not have paid DBE participation credits had it known that CAC perpetuated the pass-through scheme and presented CUF that was not performed by DBEs.

CAC asserts various arguments as to why these FCA claims must be dismissed.  CAC argues that NJDOT Form-267 requires the "Prime Contractor" - PKF and not CAC - to report to the NJDOT, not the federal government: (1) the name of the DBE; (2) a description of work performed or materials provided; (3) contract item numbers; (4) the bid amount; (5) the amount paid that month; (6) and the amounts paid since the beginning of the contract.  CAC argues that the reporting does not include any statements by CAC, and without any statements by CAC, it cannot be held to have presented false statements to the federal

government.  Additionally, CAC argues that PKF filled out the
NJDOT Form-267s and submitted them to the NJDOT, and the
complaint does not tie that to payment from the federal
government.  CAC argues that because the complaint simply
alleges that CAC submitted information to PKF that was later
submitted to NJDOT, and that PKF ultimately received funds, is
not sufficient to state a viable FCA violation.

CAC further argues that Plaintiff has not pleaded the
scienter element of a viable FCA violation claim because its
arrangements with Sanzo and Multifacet were not illegal pass-
through operations but rather legitimate business practices
permitted under the law.  Additionally, CAC argues that it had
no obligation to monitor PKF's DBE program, PKF was responsible
for the fulfillment of the prime contract's DBE goals, and
Plaintiff has otherwise failed to identify who at CAC committed
these alleged violations rather than improperly pleading
scienter collectively.

Next, CAC argues that Plaintiff has not sufficiently
pleaded the materiality prong of its FCA claims.  CAC points out
that "the Government's decision to expressly identify a
provision as a condition of payment is relevant, but not
automatically dispositive.  Likewise, proof of materiality can

24

include, but is not necessarily limited to, evidence that the
defendant knows that the Government consistently refuses to pay
claims in the mine run of cases based on noncompliance with the
particular statutory, regulatory, or contractual requirement.
Conversely, if the Government pays a particular claim in full
despite its actual knowledge that certain requirements were
violated, that is very strong evidence that those requirements
are not material." Universal Health Services, 136 S. Ct. at
2003-04. CAC argues that the scope of DBE participation is not
material to the government paying DBE credits because: DBE
participation goals are "aspirational," and not mandatory; PKF
was the low bidder on the prime contract by more than $3.6
million dollars and the NJDOT would not have rejected PKF's bid,
regardless of any proposed DBE percentage, so long as PKF or
others used good faith efforts to meet or improve its DBE
percentage; and as it relates to Sanzo, NJDOT knew about the
Taylor/Sanzo Lease, approved it, and continued to permit its
use.[5]

    Finally, CAC argues that Plaintiff's FCA claims must be
dismissed because it has not suffered any actual damages since

_____

[5] The Court notes that CAC does not make any substantive argument
regarding the legitimacy of its arrangement with Multifacet,
other than stating that it was not a pass-through scheme.

25

PKF was the lowest bidder and the first phase of the project is complete, with the federal government receiving the benefit of that completed project, and simply claiming that the government would not have paid claims if it has known of the allegedly false information is not sufficient to support actual damages.

The Court does not find these arguments persuasive at this motion to dismiss stage.  With regard to Plaintiff's first argument, even though PKF was required to complete and submit Form-267s to the NJDOT, and not the federal government, Plaintiff's complaint sufficiently alleges that PKF filled out the form, including "a description of work performed or materials provided," based on the information CAC told PKF, that information was false, and that caused PKF and NJDOT to present false claims to the federal government, which it paid, although it would not have paid if it had known the DBE information was false.

With regard to damages, Plaintiff's allegation that it would not have paid for Sanzo and Multifacet's work because those entities did not actually perform the billed CUF, which undermines the DBE program, is sufficient to support its FCA claims against CAC.  See Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 184 (3d Cir. 2001) ("The False Claims Act seeks to

redress fraudulent activity which attempts to or actually causes
economic loss to the United States government."); U.S. ex rel.
Sanders v. American-Amicable Life Ins. Co. of Texas, 545 F.3d
256, 259 (3d Cir. 2008) ("[A] party can be subject to FCA
liability (i.e. civil penalties even where the government
suffers no monetary injury," so long as a claim for payment is
made on the government).

The remainder of CAC's arguments constitutes defenses to
liability rather than demonstrating pleading deficiencies in
Plaintiff's complaint.  CAC's arrangement with the DBEs may have
been legitimate or performed in good faith, evidence may show
that PKF would have been awarded the contract despite its DBE
plan, and the aspirational, rather than mandatory, DBE goals may
not have been material to the federal government paying PKF's
claims submitted by the NJDOT.[6]  But the complaint alleges

---

[6] See note 4, *supra*, regarding Appendix A of the regulations.
See also GEOD Corp. v. New Jersey Transit Corp., 746 F. Supp. 2d
642, 646 (D.N.J. 2010) (explaining, "Federal regulations also
set the procedure for determining the goals for DBE
participation. 49 C.F.R. § 26.45. Recipients must base their
overall goal on the 'relative availability of DBEs' that is
'demonstrable evidence of the availability of ready, willing and
able DBEs relative to all businesses ready, willing and able to
participate on [the recipient's] DOT-assisted contracts.'  49
C.F.R. § 26.45(b).  Although the regulations require the
creation of goals for DBE participation, recipients cannot be
penalized if their DBE participation falls short of their
overall goal as long as their program has been administered

sufficient facts to support Plaintiff's contention that when reporting CUF performed by the DBEs for payment, CAC was required to submit bills for CUF that was actually performed by the DBEs, CAC intentionally facilitated two pass-through schemes that did not constitute the CUF it reported, which caused to be presented and did present false claims to the federal government, for which it paid, although it would not have paid had it known the DBEs' participation was false.  Counts Two and Three in Plaintiff's complaint may proceed against CAC.

### 2.   Plaintiff's Common Law Claims against CAC

CAC has moved to dismiss Plaintiff's common law fraud count for the same reasons as argued for the dismissal of Plaintiff's FCA counts.  Accordingly, the Court applies the analysis above regarding Plaintiff's FCA claims to Plaintiff's common law fraud claims.

For Plaintiff's unjust enrichment claim, CAC argues that it is improperly duplicative of Plaintiff's common law fraud tort claim, and it cannot stand because valid contracts exist which govern the obligations of PKF and CAC.  For Plaintiff's payment-by-mistake claim, CAC argues it is duplicative of Plaintiff's unjust enrichment claim.

in good faith.  49 C.F.R. § 26.47(a)").

Plaintiff counters that no contracts govern because PKF's contract was procured by fraud (based on its fraudulent inducement count), and the government otherwise had no contractual relationship with PKF or CAC.

"An essential element of [unjust enrichment and payment-by-mistake] is that the defendant retained funds." United States ex rel. Doe v. Heart Solution, PC, 923 F.3d 308, 319 (3d Cir. 2019) (quotations and citations omitted). "Unjust enrichment requires a showing that defendant received a benefit and that retention of that benefit without payment would be unjust,"[7] and "payment by mistake of fact allows the United States to recover money from a defendant that its agents have wrongfully, erroneously, or illegally paid." Id. Even though the Court will dismiss Plaintiff's fraudulent inducement count, which negates Plaintiff's first argument, the Court finds that Plaintiff's complaint sufficiently alleges CAC's alleged unjust retention of payments for claims that were procured through the

---

[7] Under New Jersey law, to state a claim for unjust enrichment, "a plaintiff must allege that (1) at plaintiffs' expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it," and that at the pleading stage, a plaintiff "need only allege facts sufficient to show: 1) Plaintiff conferred a benefit on Defendant; and 2) circumstances are such that to deny recovery would be unjust." Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 330-31 (D.N.J. 2014) (citations omitted).

improper pass-through scheme that the government contends it wrongfully paid.  Plaintiff's common law claims may proceed. See, e.g., United States v. Wavefront, LLC, 2021 WL 37539 (D.N.J. 2021) ("Under New Jersey law, '[q]uasi-contract liability [should] not be imposed . . . if an express contract exists concerning the identical subject matter.'  Defendants contend that, '[b]ecause the Complaint pleads the existence of valid contracts, . . . its unjust enrichment and payment by mistake claims are barred.' . . . The Government's quasi-contract claims are not precluded merely because this case involves several awarded contracts under a grant program." (internal citations omitted)).

### 3.   Peter Abbonizio's Motion to Dismiss

CAC's President, Peter Abbonizio, has presented myriad arguments for the dismissal of Plaintiff's claims against him. The Court finds that Plaintiff's claims against Abbonizio must be dismissed for the most fundamental of reasons:  Plaintiff's complaint fails to satisfy Rule 9(b), or even Rule 8(a) and the Twombly/Iqbal pleading standards, as to its allegations against Abbonizio individually.[8]

---

[8] Abbonizio's motion to dismiss focuses on the FCA counts against him.  Plaintiff's common law claims, which are lodged against "Defendants" collectively, are deficient in the same way as

The majority of Plaintiff's claims to support its FCA and common law counts are pleaded collectively against "Defendants." The only specific averments as to Abbonizio are that, as president of CAC, he signed the subcontract with PKF, and that he was aware, or should have been aware, of the CUF requirement for the DBE program.  Plaintiff has failed to assert any specific facts against Abbonizio separate from its allegations against CAC to support its claims regarding the alleged pass-through scheme with Sanzo and Multifacet and the alleged false claims caused to be presented to, paid by, the federal government.

It is axiomatic that a corporation acts by way of its officers and employees.  1 W. Fletcher § 30, (2) (explaining that a corporation acts only through its directors, officers, and agents).  The "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different

---

Plaintiff's FCA counts against Abbonizio, and the common law claims will be dismissed without prejudice as well as the FCA counts.  See Bintliff-Ritchie v. American Reinsurance Co., 285 F. App'x 940, 943 (3d Cir. 2008) ("The District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6).") (citing Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980)) (holding that a "district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action").

entity with different rights and responsibilities due to its different legal status." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2011) (citing United States v. Bestfoods, 524 U.S. 51, 61-62 (1998); Burnet v. Clark, 287 U.S. 410, 415, (1932); 1 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 7, 14 (rev. ed. 1999)) ("[I]ncorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs.").

A corporate officer is individually liable for the torts he personally commits, however, and he "cannot shield himself behind a corporation when he is an actual participant in the tort." Industria de Alimentos Zenú S.A.S. v. Latinfood U.S. Corp., 2017 WL 6940696, *23 (D.N.J. 2017) (quoting Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978)). "The fact that an officer is acting for a corporation also may make the corporation vicariously or secondarily liable under the doctrine of respondeat superior," but "it does not however relieve the individual of his responsibility." Id.

Thus, to hold Peter Abbonizio individually liable Plaintiff must plead facts sufficient to show how he personally

participated in the alleged pass-through scheme. Plaintiff's complaint as currently pleaded does not do so. Plaintiff's claims against Peter Abbonizio must be dismissed, but like with Plaintiff's fraudulent inducement count, the dismissal will be without prejudice should discovery reveal facts to support Peter Abbonizio's personal liability.

## CONCLUSION

For the reasons expressed above, all of Plaintiff's claims against Peter Abbonizio individually will be dismissed without prejudice. Plaintiff's FCA violation count for fraud in the inducement (Count One) against C. Abbonizio Construction, Inc. will be dismissed without prejudice. All other claims asserted against C. Abbonizio Construction, Inc. (Counts Two, Three, Four, Five, and Six) may proceed. An appropriate Order will be entered.


Date:  March 24, 2021            s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.